**IN THE COURT OF APPEALS OF IOWA**

No. 19-1714
Filed May 13, 2020

**IN THE INTEREST OF B.M.,**
**Minor Child,**

**M.B., Mother,**
     Petitioner-Appellee**,**

**S.M., Father,**
     Respondent-Appellant.
_____

Appeal from the Iowa District Court for Buchanan County, Linnea M.N. Nicol, District Associate Judge.

The father of the child appeals termination of his parental rights pursuant to Iowa Code section 600A.8(5) (2019). **AFFIRMED**.

Cory R. Gonzales, Strawberry Point, for appellant father.

James T. Peters and R.J. Longmuir of Peters & Longmuir, PLC, Independence, for appellee mother.

Melody J. Butz of Butz Law Offices, PC, Center Point, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Mullins and Ahlers, JJ.

**AHLERS, Judge.**

The father of this twelve-year-old child consented to the termination of his parental rights. He now appeals the juvenile court's order terminating those rights.

The mother of the child filed a petition seeking to terminate the father's parental rights pursuant to Iowa Code chapter 600A (2019). The petition asserted the ground of abandonment. *See* Iowa Code § 600A.8(3). The father was served with notice of the proceeding, and counsel was appointed to represent the father more than one month prior to the termination hearing. The father appeared at the hearing along with his attorney.

At the start of the hearing, the juvenile court was informed the parties had reached an agreement. Pursuant to the terms of that agreement, the father agreed to consent to termination of his parental rights. Without objection from the father, the petition was amended to allege an additional ground for termination based on the father's consent. *See id.* § 600A.8(5) (stating as a ground for termination, "A parent does not object to the termination after having been given proper notice and the opportunity to object"). Information submitted at the hearing indicated the child's stepfather has served as a father figure for the child and intended to adopt the child if the father's parental rights were terminated. The father testified, first under questioning from his attorney:

> Q. When was the last time you have had contact with your daughter in person? . . . . A. Oh, I'd say a year and a half ago.
> Q. And you are aware that her stepfather is willing to adopt the child; is that correct? A. Yeah, I am now, yeah.
> Q. Have we discussed the terms and conditions of this agreement? A. Yes.
> Q. And is anybody forcing you, coercing you or threatening you into this agreement? A. No.

Q. Are you making this agreement of your own choice? A. Yeah.

Q. Are you under the influence of any alcohol or drugs today? A. No.

Q. Do you have any mental disabilities or conditions that might affect your ability to understand the proceedings? A. No.

. . . .

Q. Have you and I had time to discuss this case? A. Yes.

Q. And have we discussed what the meaning of termination and what the effect would be of this? A. Yeah, yes.

Q. And do you believe you fully understand what consenting to a termination means? A. Yes.

Q. And do you, of your own free will today, agree or stipulate to the terms that have been put forth to terminate—the grounds by which termination is being sought? A. Yes.

Q. And you understand that termination of parental rights means that you will, from this point further, have no further parental rights? A. Yes.

Q. And you agree to that? A. Yes.

The court later questioned the father:

Q. Do you believe it is in your daughter's best interest for your parental rights to be terminated? A. Yes.

Q. Have you had enough time to talk with [your attorney] about how you wanted to proceed today? A. Yes.

. . . .

Q. And so I just want to make sure you're not being coerced. A. No, I'm not.

Q. You're not? A. No.

Q. Okay. Is there anything else you want to tell me today? A. No.

The father's attorney then asked final questions of the father:

Q. You and I have discussed the grounds for termination? A. Yep.

. . . .

Q. We have also discussed what . . . the petitioner has to prove in order to terminate your parental rights, correct? A. Yes.

Q. And you choose not to fight this case today; is that correct? A. Yes.

Q. Again, just so we're clear, no one is forcing you, threatening you or coercing you? A. No.

Q. Are you satisfied with the services that I've provided you? A. Yes.

. . . .

Q. Based on everything that has been discussed here today, do you still desire to agree to the grounds in the petition for termination of your parental rights?  A. Yes.

Q. In your opinion, is there any reason . . . the Court cannot move forward with termination today?  A. No.

Q. And you believe this is in the best interest of your child? A. Yes.

At the conclusion of the evidence, the juvenile court found the father's consent to have been given voluntarily and intelligently.  Based on that consent, the juvenile court found the mother met her burden of proving the statutory grounds for termination set forth in Iowa Code section 600A.8(5).  The juvenile court also found termination of the father's parental rights to be in the best interest of the child.  The father appeals.

We review chapter 600A termination proceedings de novo.  *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998).  "Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering credibility of witnesses."  *Id.*  "The primary interest in termination proceedings is the best interests of the child."  *Id.*  "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination.  Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence."  *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (citation omitted).  After the threshold showing of a statutory ground for termination has been made, "the petitioner next must show by clear and convincing evidence termination of parental rights is in the best interest of the child."  *In re Q.G.*, 911 N.W.2d. 761, 770 (Iowa 2018).

The father raises three issues on appeal: (1) his consent was not voluntary because it was the product of the father's emotions; (2) his consent was not in writing; and (3) he received inadequate notice the mother intended to rely on the ground for termination set forth in Iowa Code section 600A.8(5) since that ground was not asserted in the petition.

As a preliminary matter, we note error was not preserved on any of the issues. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). "When a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal." *Id.* The appellate court will not decide a case based on a ground not raised in the district court. *DeVoss v. State*, 648 N.W.2d 56, 60 (Iowa 2002). "[T]he general rule that appellate arguments must first be raised in the trial court applies to CINA and termination of parental rights cases." *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). The proper method to preserve error regarding voluntary consent to termination of parental rights is to file a motion for new trial under Iowa Rule of Civil Procedure 1.1004(7) or a petition pursuant to rule 1.1013. *In re A.C.-B.*, No. 16-0106, 2016 WL 1366865, at *2 (Iowa Ct. App. Apr. 6, 2016). In spite of the error-preservation concerns, we bypass those concerns and proceed to the merits.

With regard to the first issue raised by the father, there is no record support for the father's claim his consent was the product of emotion. We have little doubt the father was experiencing various emotions at the hearing, and he expressed some frustration with the situation that led to his consent. However, the father was

represented by counsel and his testimony reveals repeated affirmation of consent after repeated warnings, advisories, and opportunities to decline to consent. We agree with the juvenile court's finding the father's consent was voluntarily and intelligently given.

Turning to the second issue, the father's consent was not required to be in writing. The father's testimony established his decision to consent was voluntary and intelligent. His reliance on Iowa Code section 600A.4 and *In re W.O.-P.*, No. 15-0393, 2015 WL 3626203 (Iowa Ct. App. June 10, 2015), is misplaced. Section 600A.4 and its release-of-custody provisions apply to situations in which a parent initiates a process to surrender custody of a child and terminate that parent's own parental rights. *See W.O.-P.*, 2015 WL 3626203, at *3. It does not apply to the situation here, where the father, who did not have custody of the child, was sued in an effort to terminate his parental rights. Furthermore, we note Iowa Code section 600A.8(5) does not, in contrast to its counterpart in Iowa Code section 232.116(1)(a),[1] require consent per se. Rather, it requires a showing that "[a] parent does not object to the termination after having been given proper notice and the opportunity to object." Iowa Code § 600A.8(5). Here, there is no question the father did not object to termination after being given the opportunity to object, as the father personally appeared along with his attorney at the hearing and affirmatively consented to termination of his parental rights numerous times.

As for the claimed lack of notice of the amended basis for termination under section 600A.8(5), we note the termination hearing began by the attorneys for the

---

[1] Iowa Code section 232.116(1)(a) sets forth a ground for termination when "parents voluntarily and intelligently consent to the termination of parental rights."

parties informing the juvenile court they had reached a settlement. The terms of the settlement agreement were recited on the record and included an agreement for the father to consent to termination of his parental rights. The father raised no objection to this recitation of the agreement, took the stand and repeatedly testified that he consented to termination of his rights, and raised no objection when the juvenile court asked the mother's attorney if the mother desired to amend the petition to include "the ground of consent." In short, the father had notice of the amendment and consented to it.

On our de novo review, we affirm the juvenile court's order terminating the father's parental rights.

**AFFIRMED.**